UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| JON ROBERT ADAMS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 2:17-cv-00357-JAW |
| SCOTT R. LANDRY, et al. | ) |
| Defendants. | ) |

**ORDER AFFIRMING RECOMMENDED DECISION AND ADDRESSING OTHER MOTIONS**

An inmate alleges deliberate indifference to a risk of harm in violation of the Eighth Amendment on the part of seven state prison officials. After being assaulted once, the inmate fears future assaults, and he alleges the prison officials have failed to sufficiently protect him. The Court affirms the recommended decision of the Magistrate Judge to dismiss four state prison official defendants who were unaware of the plaintiff's complaints. Given this lack of notice, the inmate's underlying theory fails against these prison officials.

I.  BACKGROUND

    A.  Procedural History

On September 14, 2017, Jon Robert Adams filed a civil complaint pursuant to 42 U.S.C. § 1983 against seven named individuals in their individual and official capacities, all of whom were employed by the Maine Department of Corrections, alleging that they violated his constitutional rights by failing to protect him as a state prisoner and that he was therefore brutally assaulted. *Compl.* (ECF No. 1). On

November 14, 2017, the Magistrate Judge issued a recommended decision in which he performed the screening function contemplated in 28 U.S.C. § 1915(e) and § 1915A. *Recommended Decision After Screening Compl. Pursuant to 28 U.S.C. §§ 1915(e), 1915A* (ECF No. 11) (*Recommended Decision*). In his recommended decision, the Magistrate Judge recommended that the Court dismiss the claims against Defendants Dudley, Emerson, Fitzpatrick, and Landry. *Id.* at 1, 7-8. He also recommended that the Court authorize service of Mr. Adams' Complaint on Defendants Bailey, Brown, and McCaffery. *Id.* at 8. On November 21, 2017, Mr. Adams objected in part to the recommended decision. *Pl.'s Obj. to the Magistrate's Decision as to the Dismissal of Defs.* (ECF No. 12) (*Pl.'s Obj.*).

### B. The Magistrate Judge's Recommended Decision

The Magistrate Judge recommended that the Court dismiss Mr. Adams' claims against Defendants Dudley, Emerson, Fitzpatrick, and Landry because Mr. Adams failed to allege any facts in his Complaint to suggest that any of these Defendants "had notice, prior to the assault, of the circumstances Plaintiff cites as the bases for his need for protective custody." *Recommended Decision* at 7. By contrast, the Magistrate Judge viewed the allegations against Defendants Bailey, Brown, and McCaffery as sufficient to assert a claim of deliberate indifference, "based on Plaintiff's allegation that he advised them of a serious risk of harm (i.e. harm caused by other inmates) and that they failed to take reasonable measures to protect him from the March 31, 2015, assault." *Id.*

### C. Jon Robert Adams' Objections

2

In his November 21, 2017 objection, Mr. Adams clarified that he was objecting to the Magistrate Judge's recommendations as to Defendants Dudley, Fitzpatrick, and Landry, but not as to Defendant Emerson. *Pl.'s Obj.* at 1. He asserts that these three Defendants failed to place him in protective custody after he was assaulted on March 31, 2015. *Id.* at 1-13. Mr. Adams concedes that none of these Defendants had "direct involvement in Plaintiff's assault that occurred on March 31, 2015," but once they knew about the assault, he alleges that they "failed to protect Plaintiff from any future harm, injuries, harassment and threats." *Id.* at 12.

On November 22, 2017, Mr. Adams filed a second memorandum in support of his objection to the recommended decision.[1] *Mem. in Support of Obj.* (ECF No. 14). In his second objection, Mr. Adams repeats that he "communicated his fear of another prisoner assault to defendants Fitzpatrick, Landry and Dudley after the March 31, 2015 assault." *Id.* at 3. His claim against these three Defendants, he acknowledges, is based on "his further/future harms." *Id.* at 4. Mr. Adams cites a plethora of cases in which courts discussed the standard for deliberate indifference and what constitutes a violation of the Eighth Amendment. *Id.* at 5-11.

## II. DISCUSSION

The Court performed a de novo review of the Magistrate Judge's recommended decision and having reviewed the entire record, concurs with the Magistrate Judge's

---

[1] Although it is not a favored practice, the Court GRANTS Jon Robert Adams' Motion to File Second Memorandum in Support of Objection to the Magistrate[']s Recommended Decision (ECF No. 14). In doing so, the Court has considered that Mr. Adams is acting pro se, that he filed the motion for leave to file the second memorandum the day after he filed his first memorandum, and that there is no prejudice to a responding party because none has entered an appearance in this case.

recommendation. Ultimately, Mr. Adams is only able to sustain his claim against those Defendants he alleges were aware of his claims of a substantial risk of prisoner-on-prisoner violence before such violence manifested itself.

"That the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). The standard, as the Magistrate Judge noted, is "substantial risk of serious harm" and disregarding that risk "by failing to take reasonable measures to abate it." *Recommended Decision* at 5 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)); *see Kosilek v. Spencer*, 774 F.3d 63, 85 (1st Cir. 2014) (en banc) (citing *Helling*, 509 U.S. at 35) ("A significant risk of future harm that prison administrators fail to mitigate may suffice under the objective prong"). "Prison officials have a responsibility not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners." *Burrell v. Hampshire Cty.*, 307 F.3d 1, 7 (1st Cir. 2002) (citing *Farmer*, 511 U.S. at 833). The Court agrees with the Magistrate Judge that Mr. Adams' description of the March 31, 2015 assault could give rise to liability for those Defendants who knew about the risk before it occurred. But Mr. Adams does not allege any cognizable damages against the Defendants who first learned of Mr. Adams' fears of harm only after the March 31, 2015 assault; he only alleges their failure to adequately address his fear of future harm. This, as the Magistrate Judge pointed out, is not enough. *Id.*

The Court reviewed the numerous cases Mr. Adams cited in favor of retaining these three Defendants in his case. In the Court's view, none of the cases supports his argument against these three Defendants. Each cited case involved inmates

whose theory of liability against the prison official defendants was anchored in an actual, realized harmed, not possible future harm. *See Farmer*, 511 U.S. at 830 (transgender inmate beaten and raped); *Goka v. Bobbitt*, 862 F.2d 646, 647-48 (7th Cir. 1988) ("Williams purportedly harassed, threatened and assaulted Goka"); *Clem v. Lomeli*, 566 F.3d 1177, 1179 (9th Cir. 2009) ("Clem alleges he was beaten by his cellmate"); *Reece v. Groose*, 60 F.3d 487, 488 (8th Cir. 1995) ("This lawsuit grew out of an assault on Reece while he was in administrative segregation for his own protection"); *Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 76, 78 (6th Cir. 1995) ("Soon after his transfer, Taylor was raped by another inmate"); *Velez v. Johnson*, 395 F.3d 732, 734 (7th Cir. 2005) ("In September of 1999, David Velez was violently assaulted by his cellmate at the Milwaukee County jail"); *Berry v. Muskogee*, 900 F.2d 1489, 1492 (10th Cir. 1990) ("Mark Berry was murdered by fellow prisoners at the Muskogee City-Federal Jail . . . ."); *Hamilton v. Leavy*, 117 F.3d 742, 744 (3d Cir. 1997) ("Hamilton has a long history of being assaulted throughout the Delaware prison system"); *Hutchinson v. McCabee*, 168 F. Supp. 2d 101, 102 (S.D.N.Y. 2001) ("On November 6, 1994, Plaintiff Wayne Hutchinson . . . was attacked by a fellow inmate, Junior Vasquez"); *Mayoral v. Sheahan*, 245 F.3d 934, 935 (7th Cir. 2001) ("While Joel Mayoral was a pretrial detainee at the Cook County jail, he was attacked by other inmates"); *Pierson v. Hartley*, 391 F.3d 898, 900 (7th Cir. 2004) ("Robert J. Pierson, an inmate of the Indiana State Prison, was assaulted by fellow inmate Jeremy Wilkinson while he slept"); *Johnson v. Johnson*, 385 F.3d 503, 512 (5th Cir. 2004) ("According to the plaintiff's version of events . . . , he suffered through a horrific

5

eighteen-month period of incarceration during which the defendant prison officials failed to protect him from prison gangs who repeatedly raped him and bought and sold him as a sexual slave"); *Giroux v. Somerset Cty.*, 178 F.3d 28, 29 (1st Cir. 1999) ("Shawn Giroux, a former inmate of the Somerset County Jail, brought suit pursuant to 42 U.S.C. § 1983 against one prison employee (Sergeant Hartley), Somerset County Sheriff Barry DeLong, and Somerset County after he was assaulted by another inmate"); *Spruce v. Sargent*, 149 F.3d 783, 785 (8th Cir. 1998) ("Spruce was an inmate at the Arkansas Department of Correction between January and December of 1991. During that time, he alleges that he was repeatedly raped by more than twenty different inmates, at least one of whom infected him with HIV"); *Hearns v. Terhune*, 413 F.3d 1036, 1037 (9th Cir. 2005) ("Hearns alleged that several Calipatria State Prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to protect him from being attacked by fellow Muslim inmates"); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 343 (6th Cir. 2001) ("Flint was killed by James Underwood on October 5, 1995, while both individuals were inmates at LLCC"); *Young v. Quinlan*, 960 F.2d 351, 353 (3d Cir. 1992) ("The abuse he suffered there during his first five months of imprisonment forms the gravamen of his suit"); *Santiago v. Lane*, 894 F.2d 218, 219 (7th Cir. 1990) ("Plaintiff's charges stem largely from two brutal attacks he suffered at the hands of other inmates while incarcerated in the Illinois prison system"); *Boone v. Elrod*, 706 F. Supp. 636, 636-37 (N.D. Ill. 1989) ("Specifically, he was repeatedly forced to turn over his belongings to the gang members, and when he refused, he was beaten . . . On October 29, 1984,

plaintiff was brutally beaten by a number of gang members in Division 1, Tier G-2 . . . . Unfortunately, as a result of the beating, he was blinded in his left eye"); *Wilks v. Young*, 897 F.2d 896, 897 (7th Cir. 1990) (Plaintiff suffered "three personal assaults at the hands of Henry Montes, a co-inmate at that facility").

As can be seen, none of these cases presents facts analogous to those in Mr. Adams' case against the three Defendants the Magistrate Judge recommended be dismissed from the case: Defendants unaware of Mr. Adams' complaints before his assault and aware only of the possibility of a future assault that has not taken place. Indeed, the fact that Mr. Adams makes no allegation of a second assault after the March 31, 2015 assault strongly suggests that the state of Maine corrections system has adequately protected him since then. Cases in which courts have found deliberate indifference on the basis of solely significant risk of future, unrealized harm "requir[e] a showing that the official was subjectively aware of the risk." *Farmer*, 511 U.S. at 828.

The basic problem with Mr. Adams' deliberate indifference theory against these Defendants is, as the First Circuit has observed, that "[p]rison officials cannot be indifferent . . . if they are unaware of the risk." *Burrell*, 307 F.3d at 8. If Mr. Adams is complaining about an injury that has not yet occurred, it is unknowable whether his harm would meet this constitutional standard, and to the extent Mr. Adams is complaining about his prior assault, he has clearly not alleged that these three Defendants were aware of his prior complaints before that assault took place.

7

It is true that an inmate "does not need to wait until he is actually assaulted before obtaining relief." *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980). But those courts which have allowed relief against the prospect of assault have done so in egregious situations, where the prison was "plagued with violence and the fear of violence." *Id.*; *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973) ("confinement in a prison where violence and terror reign is actionable"). What Mr. Adams has alleged is one attack by an inmate against him; under both *Ramos* and *Woodhous*, this does not meet the cruel and unusual punishment standard. *Ramos*, 639 F.2d at 572 ("A '(prison)' setting is, at best, tense. It is sometimes explosive, and always potentially dangerous") (quoting *Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976); *Woodhous*, 487 F.2d at 890 ("[O]ccasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment").

With these standards in mind, Mr. Adams has simply failed to allege the factual predicate for an Eighth Amendment violation against the three Defendants who did not know of his complaints about a possible assault before it took place and are being sued because they have failed to act about another possible assault that has not taken place.

### III. OTHER PENDING MOTIONS

The Court granted Mr. Adams' Motion for Leave to File Second Memorandum in Support of Objection to Report and Recommended Decision (ECF No. 14).

The Court also grants his Motion for *De Novo* Review (ECF No. 13). That motion is technically superfluous because it asks the Court to apply the legal

8

standard of review of the Magistrate Judge's recommended decision that the Court is statutorily required to apply. *See* 28 U.S.C. § 636(b)(1). However, the Court sees no harm in granting the motion.

On November 30, 2017, Mr. Adams filed a motion for summary judgment together with a Statement of Fact. *See Pl.'s Mot. for Summ. J. on Part of the Case* (ECF No. 15); *Statement of Material Facts of the Pl.* (ECF No. 16). The Court dismisses Mr. Adams' motion for summary judgment without prejudice because it is premature. The remaining Defendants have not yet been served and have not yet answered his Complaint and therefore, the case is not yet in order for a motion for summary judgment. The Court dismisses his motion without prejudice, meaning that Mr. Adams may refile the motion at the appropriate time without being affected by the dismissal.

## IV. CONCLUSION

Having performed a de novo review, the Court OVERRULES the Plaintiff's Objection to the Magistrate's Decision as to the Dismissal of Defendants (ECF No. 12). The Court AFFIRMS the Recommended Decision for the reasons set forth therein and for the additional reasons set forth in this decision. The Court authorizes service of process on Defendants Penny Bailey, Glean Brown, and Scott McCaffery. The Court DISMISSES without prejudice the Complaint as against Defendants Joseph Fitzpatrick, Shawn Emerson, Robert Dudley, and Scott R. Landry. The Court GRANTS Plaintiff's Motion for Leave to File Second Memorandum in Support of Objection to Report and Recommended Decision (ECF No. 14) and GRANTS

9

Plaintiff's Motion for *De Novo* Review (ECF No. 13).  The Court DISMISSES without prejudice Plaintiff's Motion for Summary Judgment on Part of the Case (ECF No. 15).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of May, 2018